# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| SCOTT MONROE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 3:19-cv-620 |
| | ) |
| MIRAMED REVENUE GROUP, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S COMPLAINT

Plaintiff, SCOTT MONROE, by and through his attorneys, Agruss Law Firm, LLC, alleges the following against Defendant, MIRAMED REVENUE GROUP, LLC:

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 § U.S.C. 1692 et seq. ("FDCPA").

2. Count II of Plaintiff's Complaint is based on the Texas Debt Collection Act Tex. Fin. Code Ann. § 392, et seq. ("TDCA").

3. Count III of Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

## JURISDICTION AND VENUE

4. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1692k (FDCPA).

5. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court

without regard to the amount in controversy."

6. This court has federal question jurisdiction because this case arises out of violations of federal law.  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7. This court has supplemental jurisdiction over the state claim alleged herein pursuant to 28 U.S.C. § 1367 it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."

8. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

9. Plaintiff is a natural person residing in the City of Campbell, Hunt County, State of Texas.

10. Plaintiff is a consumer as that term is defined by the FDCPA and TDCA.

11. Plaintiff allegedly owes a debt as that term is defined by the FDCPA and TDCA.

12. Defendant is a debt collector as that term is defined by the FDCPA and TDCA.

13. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

14. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

15. Within the last year, Defendant attempted to collect a consumer debt from Plaintiff.

16. Defendant is an Illinois limited liability company and debt collection agency based in the Village of Lombard, DuPage County, State of Illinois.

17. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

18. When an unpaid, outstanding account is placed with Defendant it is assigned a file number.

19. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

20. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

21. During the course of its attempts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

22. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

23. Defendant is attempting to collect a consumer debt from Plaintiff.

24. Plaintiff's alleged debt owed arises from transactions for personal, family, or household purposes.

25. In or around July 2018, Defendant began calling Plaintiff in an attempt to collect the alleged debt.

26. Defendant calls Plaintiff on his cellular telephone at 903-413-7125 in an attempt to collect the alleged debt.

27. Defendant calls Plaintiff on his landline home telephone at 903-862-2189 in an attempt to collect the alleged debt.

28. Defendant calls Plaintiff's family and friends on their cellular telephones in an attempt to collect the alleged debt.

29. Defendant calls Plaintiff from several telephone numbers, including 877-523-1282, which

is one of Defendant's telephone numbers.

30. Plaintiff has answered several collection calls from Defendant.

31. During the above-referenced collection calls Plaintiff has told Defendant to stop calling him.

32. Despite Plaintiff's requests that the Defendant stop calling him, Defendant continued to call Plaintiff unabated.

33. Defendant calls Plaintiff at an annoying and harassing rate.

34. The natural consequences of Defendant's actions were to unjustly condemn and vilify Plaintiff for his non-payment of the alleged debt.

35. The natural consequences of Defendant's statements and actions were to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

36. The natural consequences of Defendant's actions were to cause Plaintiff mental distress

37. None of the calls Defendant made to Plaintiff were for an emergency purpose.

38. All of the calls Defendants made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

39. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone.

40. Plaintiff has never given to Defendant prior express consent to contact Plaintiff as described herein.

41. Even if at one point Defendant had prior express consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

42. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

43. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

44. When Plaintiff answered Defendant's calls, he was sometimes greeted with a message given by an artificial or pre-recorded voice.

45. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to collect an alleged debt.

46. Some of the calls that Defendant placed to Plaintiff resulted in Defendant leaving a voicemail message for Plaintiff spoken by an artificial or pre-recorded voice.

47. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

48. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

49. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

50. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

51. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

52. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

53. The telephone dialer system Defendant used to call Plaintiff's cellular telephone

simultaneously calls multiple recipients.

54. The dead air that the Plaintiff may have experienced on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's telephones would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

55. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a. Invading Plaintiff's privacy;
    b. Electronically intruding upon Plaintiff's seclusion;
    c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
    d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
    e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I:
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

56. Defendant violated the FDCPA based on the following:

   a. Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequence of which was to harass, oppress, and abuse in connection with the collection of an alleged debt when Defendant bombarded Plaintiff with robocalls in an attempt to collect a debt and even continued to do so after Plaintiff requested that the calls stop;

   b. Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number when Defendant bombarded Plaintiff with robocalls in an attempt to collect a debt and even continued to do so after Plaintiff requested that the calls stop;

   c. Defendant violated § 1692e of the FDCPA by its use of any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendant created the false impression on Plaintiff that Defendant was permitted by law to continue to call Plaintiff with impunity despite Defendant being told to stop calling Plaintiff;

   d. Defendant violated § 1692e(10) of the FDCPA by its use of any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendant created the false impression on Plaintiff that Defendant was permitted by law to continue to call Plaintiff with impunity despite Defendant being told to stop calling Plaintiff; and

   e. Defendant violated § 1692f of the FDCPA by using unfair or unconscionable

7

means in connection with the collection of an alleged debt when Defendant engaged in all the misconduct alleged herein.

WHEREFORE, Plaintiff, SCOTT MONROE, respectfully request judgment be entered against MIRAMED REVENUE GROUP, LLC, for the following:

a. Statutory damages of $1,000.00 for each Plaintiff pursuant to the Fair Debt Collection Practices Act, 15 § U.S.C. 1692k;

b. Costs and reasonable attorneys' fees for each Plaintiff pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k; and

c. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
## DEFENDANT VIOLATED THE TEXAS DEBT COLLECTION ACT

57. Plaintiff repeats and realleges paragraphs 1-55 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

58. Defendant violated the TDCA based on the following:

a. Defendant violated Tex. Fin. Code § 392.302(4) by oppressing, harassing, or abusing Plaintiff by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number when Defendant bombarded Plaintiff with robocalls in an attempt to collect a debt and even continued to do so after Plaintiff requested that the calls stop.

WHEREFORE, Plaintiff, SCOTT MONROE, respectfully requests judgment be entered against Defendant, MIRAMED REVENUE GROUP, LLC, for the following:

a. For statutory damages provided and pursuant to Tex. Fin. Code Ann. § 392.403 and/or Tex. Bus. & Com. Code § 17.50(d);

8

    b.  For attorneys' fees, costs and disbursements;

    c.  Injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1); and

    d.  For any such other and further relief, as well as further costs, expenses and disbursements for this action, as this court may deem just and proper.

## COUNT III:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

59. Plaintiff repeats and realleges paragraphs 1-55 of Plaintiff's Complaint as the allegations in Count III of Plaintiff's Complaint.

60. Defendant's conduct violated the TCPA by:

    a.  Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, SCOTT MONROE, respectfully requests judgment be entered against Defendant, MIRAMED REVENUE GROUP, LLC for the following:

61. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

63. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

64. Any other relief that this Honorable Court deems appropriate.

DATED: March 13, 2019            RESPECTFULLY SUBMITTED,

                                By: /s/ Michael S. Agruss
                                   Michael S. Agruss
                                   IL State Bar #: 6281600
                                   Agruss Law Firm, LLC
                                   4809 N. Ravenswood Ave., Suite 419
                                   Chicago, IL 60640
                                   Tel: 312-224-4695
                                   Fax: 312-253-4451
                                   michael@agrusslawfirm.com
                                   Attorney for Plaintiff